THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ERIC C. REYES,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BRETT SKIDMORE et al.,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER TO CURE DEFICIENT COMPLAINT**<br><br>Case No. 2:25-CV-1160-TS<br><br>District Judge Ted Stewart |

Plaintiff Eric C. Reyes, acting *pro se*, brought this civil-rights action, *see* 42 U.S.C.S. § 1983 (2026).[1] Having screened the Complaint, Dkt. No. 1, under its statutory review function, 28 U.S.C.S. § 1915A (2026),[2] the Court now orders Plaintiff to file an amended complaint curing deficiencies if he would like to further pursue claims.

---

[1]The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:
> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any **State** or **Territory** . . ., subjects, or **causes** to be subjected, any citizen of the United **States** or other **person** within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.S. § 1983 (2026).

[2] The screening statute reads:
> (a) Screening.--The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

## A. COMPLAINT'S DEFICIENCIES

The Complaint:

**1.** appears to name Salt Lake Police Department as a defendant, when police departments "are not legally suable entities." *Lindsey v. Thomson*, 275 Fed. App'x. 744, 747 (10th Cir. 2007).

**2.** possibly improperly alleges civil-rights violations on a *respondeat superior* theory. (See below.)

**3.** generally does not properly affirmatively link an individual named defendant to each element of each alleged civil-rights violation. (See below.)

**4.** does not give enough details--like descriptions, dates and of interactions, etc.--about any possible unknown defendants, to help the Court try to seek waiver of service from them.

**5.** does not adequately link each element of a due-process claim to specific named defendant(s). *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." (cleaned up)).

**6.** seeks that his sentence be vacated, a remedy available only in a habeas or post-conviction petition. *See Rhodes v. Hannigan*, 12 F.3d 989, 991 (10th Cir. 1993) (explaining habeas-corpus proceeding "attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement," while "civil rights action . . . attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions") (citation omitted)).

**7.** asserts claims attacking the validity of Plaintiff's incarceration, which should be timely exhausted in the state-court system before being brought in a federal habeas-corpus petition, not a civil-rights complaint.

**8.** improperly names Plaintiff's public defender as a defendant, when such attorneys are not state actors under § 1983. (See below.)

**9.** needs clarification as to what constitutes a cause of action under the Americans with Disabilities Act (ADA). *See* 42 U.S.C.S. §§ 12101-12213 (2026) (See below.)

---

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2026).

**10.** alleges possible constitutional violations resulting in injuries appearing to be prohibited by 42 U.S.C.S. § 1997e(e) (2026), which reads, "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of a physical injury or the commission of a sexual act."

**11.** does not concisely link each element of the claim of intentional infliction of emotional distress to individually named defendant(s).[3] (See below.)

**12.** does not concisely link *each element* of the claim of improper medical treatment to each individually named defendant. (See below.)

**13.** does not evince appropriate understanding of how a conspiracy claim under 42 U.S.C.S. § 1985 (2026) works. (See below.)

**14.** alleges conspiracy claims that are too vague. (See below.)

**15.** does not evince appropriate understanding of how a claim under the Emergency Medical Treatment and Labor Act (EMTALA) works, 42 U.S.C.S. § 1395dd (2026). (See below.)

**16.** perhaps tries to bring an equal-protection claim, but does not adequately link *each element* of an equal-protection claim to specific named defendant(s). *See Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019) (explaining that--to state equal-protection claim--plaintiff must allege facts showing (a) prison officials treated him differently from similarly situated inmates and (b) disparate treatment was not reasonably related to penological interests).

**17.** inappropriately suggests a claim under "HIPPA." (See below.)

**18.** under *Heck*, inappropriately asks for a stay of these proceedings. (See below.)

**19.** has claims apparently based on current confinement; however, the complaint appears not to have been drafted using legal help Plaintiff is constitutionally entitled to by his institution--e.g., contract attorneys. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996) (requiring prisoners be given "*adequate* law libraries or *adequate* assistance from persons trained in the law . . . to ensure that inmates . . . have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement") (citation modified).

---

[3]Plaintiff should keep in mind that, if he brings state-law claims, the Court may take jurisdiction over such claims only as a matter of **"pendent jurisdiction,"** which allows "district courts to hear [state-law] claims that form 'part of the same case or controversy' as the claims on which original federal jurisdiction is based." *Thornton v. GEO Grp., Inc*. No. CV 14-893 MCA/CG, 2016 U.S. Dist. LEXIS 140710, at 38-39 (D.N.M. May 16, 2016); *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1232 (D. Colo. 2016). Thus, if all Plaintiff's "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

## B. GUIDANCE FOR PLAINTIFF

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Rule 8's requirements mean to guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Commc'ns Network, Inc. v ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991).

Pro se litigants are not excused from meeting these minimal pleading demands. "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, it is improper for the Court "to assume the role of advocate for a pro se litigant." *Id.* Thus, the Court cannot "supply additional facts, [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

Plaintiff should consider these points before filing an amended complaint:

**1.** A revised complaint must stand entirely on its own and not refer to, or incorporate by reference, any part of the original complaint(s). *See Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998) (stating amended complaint supersedes original). Also, an amended complaint may not be added to after filing without moving for amendment. Fed. R. Civ. P. 15.

**2.** Each defendant must be named in the complaint's caption, listed in the section of the complaint setting forth names of each defendant, and affirmatively linked to applicable claims within the "cause of action" section of the complaint.

4

**3.** The complaint must clearly state what each individual defendant--typically, a named government employee--did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (cleaned up). Plaintiff should also include, as much as possible, specific dates or at least estimates of when alleged constitutional violations occurred.

**4.** Each claim, together with facts and citations directly supporting it, should be stated separately. Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("The [*Bell Atlantic Corp. v.*] *Twombly* Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].' [550 U.S. 544, 565] n.10 (2007). Given such a complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . . . would have little idea where to begin.' *Id*.").

**5.** Plaintiff may not name an individual as a § 1983 defendant based solely on supervisory position. *See Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996).

**6.** Grievance denial alone, unconnected to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

**7.** "No action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (2026). However, Plaintiff need

not include grievance details in the complaint. Exhaustion of administrative remedies is an affirmative defense that must be raised by defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

8. ***Respondeat superior***. The Supreme Court holds that, in asserting a § 1983 claim against a government agent in an individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662 676 (2009). Consequently, there is no *respondeat superior* liability under § 1983. *See id.* ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Entities may not be held liable on the sole ground of an employer-employee relationship with a claimed tortfeasor. *See Monell v. Dept' of Soc. Servs.*, 436 U.S. 658, 689 (1978). Supervisors are considered liable for their own unconstitutional or illegal policies only, and not for employees' tortious acts. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

9. **Affirmative Link.**

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998))

6

> (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants--"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Id*. at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id*.

**10. State Actor.** "[T]he Supreme Court has stated that 'a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Garza v. Bandy*, 293 F. App'x 565, 566 (10th Cir. 2008) (unpublished) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). And, "'though the defective performance of defense counsel may cause the trial process to deprive an accused person of his liberty in an unconstitutional manner, the lawyer who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of § 1983.'" *Id.* (quoting *Briscoe v. LaHue*, 460 U.S. 325, 329 n. 6 (1983)).

**11. ADA.** Plaintiff should also consider this information in amending the complaint:

> To state a failure-to-accommodate claim under [ADA], [Plaintiff] must show: (1) he is a qualified individual with a disability; (2) he was "either excluded from participation in or denied the benefits of some public entity's services, programs, or activities"; (3) such exclusion or denial was by reason of his disability; and (4) [the defendant] knew he was disabled and required an accommodation.

*Ingram v. Clements*, 705 F. App'x 721, 725 (10th Cir. 2017) (cleaned up).

7

Further,

> "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V.*, 813 F.3d at 1295. "The ADA requires more than physical access to public entities: it requires public entities to provide '*meaningful* access' to their programs and services." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007). To effectuate this mandate, "the regulations require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'" *Id.* (quoting 28 C.F.R. § 35.130(b)(7)).

*Villa v. Dep't of Corrs.*, 664 Fed. App'x 731, 734 (10th Cir. 2016).

Finally, Plaintiff may not sue a defendant in an individual capacity under ADA. *Watson v. Utah Highway Patrol*, No. 4:18-CV-57, 2019 U.S. Dist. LEXIS 234094, at *6 (D. Utah 2019).

> "Only public entities are subject to Title II." *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d 856 (2015). The Tenth Circuit has held "that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition." *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999); *see also Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) ("We hold that the [ADA] does not provide for individual liability, only for employer liability."); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA.").

*Watson*, 2019 U.S. Dist. LEXIS, at *6-7.

**12. Intentional infliction of emotional distress**. A *prima facie* case of intentional infliction of emotional distress contains the following elements:

> [T]he defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be

considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Samms v. Eccles*, 358 P.2d 344, 346-47 (Utah 1961) (adopting section 46 of Restatement (Second) of Torts).

    **13. Inadequate medical treatment.** The following principles govern claims of inadequate medical treatment, including delays and gatekeeper liability:

> Jail officials violate a detainee's constitutional rights through deliberate indifference whenever they knowingly ignore a "substantial risk of serious harm" to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). "Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). To meet the objective component, the harm suffered must be "sufficiently serious" to implicate the Eighth Amendment's prohibition of cruel and unusual punishment. *Id.* Under the subjective component, "the [inmate] must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* (internal quotation marks and citation omitted).
>
>     "A medical need is considered sufficiently serious to satisfy the objective prong if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Where, as here, an inmate is alleging that they were harmed by a delay in eventual medical treatment, the objective component of harm "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* at 1193 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). Thus, this standard can be satisfied merely by "an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." *Id.* (citation omitted).
>     . . . .
>     There is no precise amount of suffering that makes a delay in medical care actionable. Whether pain and suffering are sufficiently serious for a deliberate indifference claim depends on context, and "[e]ven a brief delay [in medical treatment] may be unconstitutional." *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005)

> . . . .
>     The subjective component requires a defendant to "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. . . .
>     A jail official exhibits deliberate indifference if he "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference[.]" *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

*Hardy v. Rabie*, 147 F.4th 1156, 1164-66 (10th Cir. 2025).

**14. Civil conspiracy claim under 42 U.S.C.S. § 1985 (2026)**. The existence of a conspiracy is a prerequisite to claims under § 1985(2) and § 1985(3). *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990) ("Section 1985(2) specifically requires the existence of 'two or more persons' who 'conspire.'" (citation omitted)); *see also Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) ("Firstly, a valid [§ 1985(3)] claim must, of course, involve a conspiracy."). "A civil conspiracy requires the combination of two or more persons acting in concert[,]" such that there was "a meeting of the minds or agreement among the defendants." *Abercrombie*, 896 F.2d at 1230.

"There are four distinct clauses in [§] 1985(2), each creating a distinct cause of action," such as a deterrence claim or a retaliation claim. *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (citing *Wright v. No Skiter, Inc.*, 774 F.2d 422, 425 (10th Cir. 1985)).

Meanwhile, "[t]he essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton*, 6 F.3d at 686 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

**15. Pleading conspiracy**. Further, as to any conspiracy claim, Plaintiff "must specifically plead 'facts tending to show agreement and concerted action.'" *Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) (quoting *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)). Plaintiff has not met this responsibility in his current complaint; his vague assertions that multiple people were involved in breaching his civil rights, and, therefore, a conspiracy must be involved, are not enough. He must assert more detail to pursue these claims further.

**16. EMTALA claim**.

> "Congress enacted EMTALA in 1986 to address the problem of 'dumping' patients in need of medical care but without health insurance." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir. 2001) ("the rights guaranteed under EMTALA apply equally to all individuals whether or not they are insured"). Dumping occurs when a hospital declines to treat or transfers patients because of their inability to pay. At its core, EMTALA functions to "ensure all patients, regardless of their perceived ability or inability to pay for medical care, are given consistent attention." *Id.* at 797.
> Under EMTALA, 42 U.S.C. § 1395dd, a hospital that receives Medicare payments and operates an emergency room has two requirements. "First, if an individual arrives at the emergency room and requests treatment, the hospital must 'provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists.'" *King*, 43 F.3d at 523, 525 (citing 42 U.S.C. § 1395dd(a)). "Second, if the examination reveals the patient is suffering from an emergency medical condition, the hospital usually must stabilize the patient before getting into the business of trying to transfer him elsewhere." *Genova v. Banner Health*, 734 F.3d 1095, 1097 (10th Cir. 2013).
> . . . .
> *1. Appropriate Medical Screening Examination*
> The first obligation under EMTALA requires hospitals to provide an individual requesting treatment in its emergency room with "an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department,

to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a) (emphasis added).

We have held that "whether a given hospital has performed an 'appropriate medical screening examination,' as defined by EMTALA, varies with the unique capabilities of the specific hospital." *Phillips*, 244 F.3d at 797. A hospital sets forth which procedures are within its EMTALA capabilities when it establishes a standard screening policy, such as through its rules or bylaws. *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994).

Our review is limited. "We give appropriate deference to the existing screening procedures utilized by the hospital, because it, not a reviewing court, is in a superior position to determine its own capabilities and limitations." *Phillips*, 244 F.3d at 797 (citing *Repp*, 43 F.3d at 522). Accordingly, we inquire only whether the hospital adhered to its own procedures; we do not assess the adequacy of such procedures. *Repp*, 43 F.3d at 522 & n.4; *see also id.* at 523 (Mere de minimis variations or "slight deviations by a hospital from its standard screening policy" do not violate EMTALA); *Phillips*, 244 F.3d at 798 ("EMTALA does not set a federal standard of care or replace pre-existing state medical negligence laws.").

. . . .

*2. Stabilization and Transfer*

The second requirement under EMTALA provides that "if an individual at a hospital has an emergency medical condition which has not been stabilized . . . , the hospital may not transfer the individual unless" certain conditions are met. *King*, 43 F.3d at 525 (citing 42 U.S.C. § 1395dd(c)(1)). We have previously held that "[a] plain reading of the statute reveals actual knowledge of an unstabilized emergency medical condition as a requirement to establish liability." *Id.* (emphasis added) ("The hospital cannot be held to stabilize an emergency situation without knowing an emergency exists."). In other words, EMTALA's stabilization and transfer requirements do not apply until the hospital determines and has actual knowledge of the individual's unstabilized emergency medical condition. *Id.* at 526.

*Koel v. Citizens Med. Ctr., Inc.*, 128 F.4th 1329, 1334-37 (10th Cir. 2025).

**17. HIPPA claim**.

There is no private cause of action for HIPAA law violations. "HIPAA" stands for Health Insurance Portability and Accountability Act. The law provides for civil and criminal

12

penalties for improper disclosure of medical information. But, orders from the Tenth Circuit and this court have observed a consensus of opinion that HIPAA does not create a private right of action. *E.g., Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *Wilson v. Saint Francis Cmty Servs.*, 2018 U.S. Dist. LEXIS 157892 (D. Kan. Sept. 17, 2018). The Tenth Circuit recently reaffirmed this holding in *Freier v. Colorado*, 804 Fed. App'x 890, 891-92 (10th Cir. 2020). The Tenth Circuit has also noted that two circuit courts have held that § 1983 may not be used to remedy a HIPAA violation. *Thompson v. Larned State Hosp.*, 597 Fed. App'x 548, 550 (10th Cir. 2015) (citing *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) and *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010)). The Secretary of Health and Human Services or state attorneys general must enforce against HIPAA violations. *Freier*, 804 Fed. App'x at 892.

*Lomon v. Beyers*, No. 20-3315, 2020 U.S. Dist. LEXIS 245034, at *5-6 (D. Kan. Dec. 31, 2020).

18. **Heck**. Some allegations, if true, may invalidate Plaintiff's incarceration. "In *Heck*, the Supreme Court explained that a § 1983 action that would impugn the validity of a plaintiff's [incarceration] cannot be maintained unless the [basis for incarceration] has been reversed on direct appeal or impaired by collateral proceedings." *Nichols v. Baer*, 315 F. App'x 738, 739 (10th Cir. 2009) (unpublished) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). *Heck* keeps litigants "from using a § 1983 action, with its more lenient pleading rules, to challenge their [incarceration] without complying with the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007) (citation omitted).

*Heck* requires that, if a plaintiff requests § 1983 damages, this Court must decide whether judgment for the plaintiff would unavoidably imply the invalidity of Plaintiff's incarceration. *Id.* at 487. Here, it appears it may. If this Court were to conclude that Plaintiff's constitutional rights were violated in a prejudicial manner, it would be stating that Plaintiff's incarceration was

13

invalid. Thus, the involved claims "must be dismissed unless the plaintiff can demonstrate that [a] conviction or sentence *has already been* invalidated." *Id*. (emphasis added).

### C. MOTION FOR APPOINTED COUNSEL

Plaintiff moves for "appointment of counsel." Dkt. No. 2.

"As a civil litigant, plaintiff has no Sixth Amendment right to counsel." *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006). And the Court lacks authority to appoint counsel; still, federal statute authorizes the Court to ask counsel to agree to represent an indigent plaintiff free of charge.[4] *See* 28 U.S.C.S. § 1915(e)(1) (2026) ("The Court may request an attorney to represent any person unable to afford counsel."); *McCleland v. Raemisch*, No. 20-1390, 2021 U.S. App. LEXIS 29490, at *15 n.3 (10th Cir. Sept. 30, 2021) (unpublished) (explaining, when prisoner-plaintiffs "refer to appointing counsel," they "really refer to a request that an attorney take the case *pro bono*"). Plaintiff has not met his burden here of convincing the Court that Plaintiff's claim has enough merit to warrant such a request of counsel. *McCarthy v.*

---

[4]The Tenth Circuit has noted:

> Each year, the district court receives hundreds of requests for legal representation and only a small number of attorneys are available to accept these requests. Accordingly, the district court must use discretion in deciding which cases warrant a request for counsel. To do otherwise would deprive clearly deserving litigants of an opportunity to obtain legal representation. The dilemma is unfortunate for litigants [denied counsel]. But the dilemma [i]s not the district court's fault; that dilemma [i]s the product of the court's lack of authority to compel legal representation or to reimburse attorneys for their time.

*Rachel v. Troutt*, 820 F.3d 390, 397 n.7 (10th Cir. 2016); *see also Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (stating courts may not "require an unwilling attorney to represent an indigent litigant in a civil case"); *Greene v. U.S. Postal Serv.*, 795 F. App'x 581, 583 (10th Cir. 2019) (unpublished) ("In most legal communities, only a limited number of attorneys are willing to take these cases. Thus, the district court [must] decide how to maximize the benefit from these local resources."); *Gross v. GM LLC*, 441 F. App'x 562, 567 (10th Cir. 2011) (unpublished) (observing courts rarely request counsel to represent parties in civil actions); *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992) (cautioning courts that indiscriminately appointing "volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time").

*Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985). Additionally, "[i]t is not enough" for Plaintiff to argue that he needs help "in presenting his strongest possible case, as the same could be said in any case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (cleaned up).

In deciding whether to ask volunteer counsel to represent Plaintiff at no cost, this Court considers a variety of factors, like "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (cleaned up); *accord McCarthy*, 753 F.2d at 838-39. Considering the above factors, the Court concludes here that, at this time, Plaintiff's claims may not be colorable, the issues in this case are not complex, and Plaintiff does not appear to be too incapacitated or unable to adequately function in pursuing this matter. Further, there is no valid complaint on the docket as of this Order. For these reasons, the Court denies for now Plaintiff's motion for the Court to request counsel to represent Plaintiff *pro bono*. Dkt. No. 2.

### D. ORDER

**IT IS HEREBY ORDERED** as follows:

**1.** Plaintiff must within 120 days cure the Complaint's deficiencies noted above by filing a single document entitled, "Amended Complaint," that does not refer to or include any other document. Dkt. No. 1.

**2.** The Clerk's Office shall mail Plaintiff the Pro Se Litigant Guide with a blank-form civil-rights complaint which Plaintiff must use to pursue an amended complaint.

**3.** If Plaintiff fails to timely cure the above deficiencies according to this Order's instructions, this action will be dismissed without further notice.

**4.** The amended complaint shall not include any claims outside the dates and allegations of transactions and events contained in the Complaint, filed December 29, 2025. *Id.* The Court will not address any such new claims or outside allegations, which will be dismissed. If Plaintiff wishes to raise other claims and allegations, Plaintiff may do so only in a new complaint in a new case. If an amended complaint is filed, the Court will screen each claim and defendant for dismissal.

**5.** Plaintiff must tell the Court of any address change and timely comply with Court orders. *See* D. Utah Civ. R. 83-1.6(b) ("An unrepresented party must immediately notify the Clerk's Office in writing of any name, mailing address, or email address changes."). Failure to do so may result in this action's dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.").

**6.** Extensions of time are disfavored, though reasonable extensions may be granted. Any motion for time extension must be filed no later than **fourteen days** before the deadline to be extended.

**7.** No direct communication is to take place with any judge. All relevant information, letters, documents, and papers, labeled with case number, are to be directed to the court clerk.

**8.** Plaintiff must observe this District of Utah local rule: "A party proceeding without an attorney (unrepresented party or *pro se* party) is obligated to comply with: (1) the Federal Rules

16

of Civil Procedure; (2) these Local Rules of Practice; (3) the Utah Standards of Professionalism and Civility; and (4) other laws and rules relevant to the action." DUCivR 83-1.6(a).

9. Plaintiff's motion for "appointment of counsel" is **DENIED**. Dkt. No. 2. However, if--after the case develops further--it appears that counsel may be needed or of specific help, the Court may ask an attorney to appear *pro bono* on Plaintiff's behalf. The Court will continually reevaluate the need for counsel; thus, no further motions for the Court to request *pro bono* representation are needed.

DATED this 20th day of July, 2026.

BY THE COURT:

_____

JUDGE TED STEWART
United States District Court

17